# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CAUSE NO.: 2:18-CR-116-TLS-APR |
| BASIL UBANWA | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion to Dismiss Indictment [ECF No. 25], filed on September 13, 2019. For the reasons stated below, this Motion is DENIED.

## BACKGROUND

On February 21, 2018, FBI Agent Charles Pawelko appeared before a Grand Jury. Ex. B, p. 3, ECF No. 25-2. Agent Pawelko stated that he had investigated Defendant Basil Ubanwa, who was the operator of Northwest Ambulance Services, Inc. *Id.* Agent Pawelko testified that "[t]he basis for the investigation was us receiving information that this particular ambulance company was transporting individuals and billing Medicare and being reimbursed by Medicare for transporting these individuals when these people did not qualify for ambulance transportation." *Id.* at 3. Agent Pawelko explained that the FBI had conducted "surveillance of ambulance transports by this company. We've spoken to employees of the company, former employees of the company, family members of the patients, you know, lots of document reviews, spoke with the biller for the company during the timeframe that we were investigating." *Id.* at 4. Based upon this investigation, Agent Pawelko testified as follows:

> Based on—based on the people we had spoken to and the things we've reviewed, it does appear that, number one, the majority of people that Northwest was transporting during the time of our investigation were patients being transported to and from dialysis, which is a form of – it's a nonemergency transportation. And so far, what we've seen does support the allegation that they are transporting patients who do not qualify for this type

of transportation. There's many indicators that these patients are capable of being transported to dialysis and other places by different means.

*Id.* at 4–5. The Prosecutor also asked the following question: "Generally, what are the rules for ambulance transportation for nonemergency travel like, for example, to dialysis?" *Id.* at 4. Agent Pawelko answered as follows: "Sure. Just a generic way of putting it is that the person only qualifies if they cannot be transported safely by any other means." *Id.*

Carlos Trevino, an Emergency Medical Technician and employee of Northwest Ambulance, was then called to testify before the Grand Jury. Ex. C, pp. 2, 5–6, ECF No. 25-3. In essence, Trevino testified that the Defendant directed his employees to alter and fabricate documents so that Medicare would reimburse Northwest Ambulance for transporting patients who did not qualify for ambulance transportation. *See, e.g.*, *id.* at 12, 24–27, 44–45, 52. The Prosecutor also discussed various patients that Northwest Ambulance had transported, and Trevino offered his opinion on whether those patients qualified for transport under the applicable Medicare regulations. *Id.* at 29, 31, 34. The Prosecutor also asked Trevino the following question: "how many millions of dollars was paid out by Medicaid for the transportation of [the] patients?" *Id.* at 54. Trevino responded that he did not know. *Id.* The Prosecutor then asked a follow up question: "Would it surprise you to know it's 3 or 4 million dollars?" *Id.* Trevino answered, "That is surprising, yes." *Id.*

On October 17, 2018, the Grand Jury charged Defendant with (1) one count of conspiracy to commit health care fraud; (2) ten counts of health care fraud; and (3) one count of Medicaid health care fraud. *See* Indictment, ECF No. 1; 18 U.S.C. §§ 371, 1347. On September 13, 2019, the Defendant filed the instant Motion to Dismiss Indictment.

2

# ANALYSIS

The Defendant requests that the Court, pursuant to its supervisory power, dismiss the Grand Jury's Indictment. The Defendant's request is DENIED.

The Grand Jury Clause of the Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . .'" U.S. Const. amend. V. "The grand jury is a body known to the common law, to which is committed the duty of inquiring whether there be probable cause to believe the defendant guilty of the offense charged." *Beavers v. Henkel*, 194 U.S. 73, 84 (1904); *see also United States v. Williams*, 504 U.S. 36, 51 (1992) ("It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge."). "The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Kaley v. United States*, 571 U.S. 320, 328 (2014); *see also Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury . . . is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.").

Pursuant to its supervisory authority, the district court may "dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions[.]'" *Williams*, 504 U.S. at 46 (quoting *United States v. Mechanik*, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring)). Pursuant to 18 U.S.C. § 1623, it is unlawful to knowingly make a false statement before a grand jury; likewise, pursuant to 18 U.S.C. § 1622, it is unlawful to procure another to commit perjury. 18 U.S.C. §§ 1622, 1623(a); *see also Williams*, 504 U.S. at 46 n. 6.

3

Nevertheless, absent discrimination in the selection of a grand jury, "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254, 256–57 (1998); *see United States v. Vincent*, 416 F.3d 593, 602 (7th Cir. 2005). "Prejudice occurs if a 'violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence' of the violation." *United States v. Anderson*, 61 F.3d 1290, 1296 (7th Cir. 1995) (quoting *Bank of Nova Scotia*, 487 U.S. at 256). "This general rule encompasses claims of prosecutorial misconduct during the grand jury proceedings." *Anderson*, 61 F.3d at 1296.

It is a criminal offense to conspire to "defraud the United States, or any agency thereof in any manner or for any purpose." 18 U.S.C. § 371; *see United States v. Kelerchian*, 937 F.3d 895, 905 (7th Cir. 2019). Furthermore, it is a criminal offense to knowingly and willfully execute, or attempt to execute, a scheme to defraud any health care benefit program. 18 U.S.C. § 1347(a); *see United States v. Bek*, 493 F.3d 790, 801 (7th Cir. 2007). "Under the Medicare Act, health care providers are entitled to reimbursement for the 'reasonable cost' of medical services they provide to Medicare beneficiaries." *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 541 (7th Cir. 2012) (citing 42 U.S.C. § 1395f(b)(1); 42 C.F.R. § 413.9(a)). Medicare covers ambulance services so long as certain conditions are met. *See* 42 C.F.R. § 410.40(a). In pertinent part, nonemergency ambulance transportation is appropriate "if either: the beneficiary is bed-confined, and it is documented that the beneficiary's condition is such that other methods of transportation are contraindicated; or, if his or her medical condition, regardless of bed confinement, is such that transportation by ambulance is medically required." 42 C.F.R. § 410.40(d)(1). Medicare also has a special rule for nonemergency, scheduled, repetitive

ambulance services. 42 C.F.R. § 410.40(d)(2). Since the January 1, 2013 amendment, this regulation now reads as follows:

> (i) Medicare covers medically necessary nonemergency, scheduled, repetitive ambulance services if the ambulance provider or supplier, before furnishing the service to the beneficiary, obtains a written order from the beneficiary's attending physician certifying that the medical necessity requirements of paragraph (d)(1) of this section are met. The physician's order must be dated no earlier than 60 days before the date the service is furnished.
>
> (ii) In all cases, the provider or supplier must keep appropriate documentation on file and, upon request, present it to the contractor. The presence of the signed physician certification statement does not alone demonstrate that the ambulance transport was medically necessary. All other program criteria must be met in order for payment to be made.

42 C.F.R. § 410.40(d)(2)(i), (ii) (eff. Jan. 1, 2013).

In this case, the Defendant argues that the Grand Jury's Indictment should be dismissed because the Government failed to present exculpatory evidence which would have supposedly demonstrated that it was medically necessary to transport the patients. This argument is without merit because the Government has no duty to present exculpatory evidence to a grand jury. *Williams*, 504 U.S. at 51–53 ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."); *see Kaley*, 571 U.S. at 338 ("So, for example, we have held the confrontation and cross-examination of witnesses unnecessary in a grand jury proceeding. Similarly, we have declined to require the presentation of exculpatory evidence, and we have allowed the introduction of hearsay alone.") (internal quotation marks and citations omitted); *see also* Andrew D. Leipold, 1 Fed. Prac. & Proc. Crim. § 113 (4th ed. 2019) ("For a time it was common for defendants to allege that the prosecutor had abused the process by withholding significant exculpatory evidence from the grand jury. . . . [H]owever, the Supreme Court rejected these claims in 1992 in United States v. Williams, holding that a district court may not dismiss

an otherwise valid indictment because the government failed to disclose to the grand jury substantial exculpatory evidence in its possession.").

The Defendant also argues that Agent Pawelko misstated the law and the Prosecutor did not correct the misstatements. For example, the Defendant highlights that Agent Pawelko testified as follows: "Just a generic way of putting it is that the person only qualifies [for nonemergency transportation under Medicare] if they cannot be transported safely by any other means." Ex. B, p. 4. The Defendant also argues that the Prosecutor elicited false testimony from Trevino regarding whether certain patients qualified for nonemergency ambulance transport under the applicable Medicare regulations. Ex. C, pp. 29, 31, 34. The Defendant further argues that the Prosecutor's questions regarding the amount of money paid to the Defendant served no purpose other than to inflame the passions of the Grand Jury. These arguments are without merit. First, Agent Pawelko stated the law in generic terms so as to provide context to the Grand Jury; there is no evidence that he intentionally misstated the law. The Defendant's second argument regarding Trevino's allegedly false testimony is equally without merit. Trevino, an EMT and employee of Northwest Ambulance, was offering his opinion on whether certain patients qualified for ambulance transportation. The Defendant argues at length why these patients supposedly did qualify for ambulance transportation based upon his interpretation of the facts and the law; however, this argument, even if true, fails to demonstrate that the Prosecutor knowingly elicited false testimony from Trevino. Finally, the Prosecutor's questions regarding the amount of money that the Defendant received for allegedly unnecessary ambulance transportation was relevant to the criminal charges before the Grand Jury. *See* 18 U.S.C. § 1347(a)(2) (making it unlawful "to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or

6

control of, any health care benefit program"); *see* Fed. R. Evid. 401 (evidence is relevant if it has any tendency to make a fact of consequence more or less probable).

Even if the Court were to assume that these arguments had any merit, the Defendant fails to demonstrate how he was prejudiced. *See United States v. Geisler*, 143 F.3d 1070, 1072 (7th Cir. 1998) ("Even assuming *arguendo* that the challenged testimony could be construed to constitute perjury, Geisler could not make the necessary showing that the agent's testimony affected the grand jury's decision to indict). For example, Agent Pawelko testified that "it does appear that, number one, the majority of people that Northwest was transporting during the time of our investigation were patients being transported to and from dialysis, which is a form of – it's a nonemergency transportation." Ex. B., p. 4–5. He further testified that "so far, what we've seen does support the allegation that they are transporting patients who do not qualify for this type of transportation." *Id.* at 5. Trevino testified that the Defendant directed his employees to modify and fabricate documents so that Northwest Ambulance would be reimbursed for transporting patients who did not qualify for Medicare reimbursement. *See, e.g.*, *id.* at pp. 12, 24–27, 44–45, 52. Given the strength of this testimony, the Defendant fails to demonstrate how the purported errors substantially influenced the Grand Jury's Indictment.[1] *Bank of Nova Scotia*, 487 U.S. at 263–64; *see United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) ("Determinations of probable cause are naturally based on probabilities, and a finding of probable cause 'does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.'" (quoting *United States v. Carrillo*, 269

---

[1] The Court emphasizes that it is not reviewing the Grand Jury's probable cause determination. *See Kaley*, 571 U.S. at 328. Instead, the Court is merely finding that the Defendant was not prejudiced.

7

F.3d 761, 766 (7th Cir. 2001))). Thus, because the Defendant has not shown prejudice, his arguments fail. *Bank of Nova Scotia*, 487 U.S. at 263–64.

## CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss Indictment [ECF No. 25] is DENIED.

SO ORDERED on November 15, 2019.

                                              s/ Theresa L. Springmann
                                              CHIEF JUDGE THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT