# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.: 2:18-CR-116-TLS-APR |
| BASIL UBANWA | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion to Dismiss and Bar Evidence of Pre-Amendment Conduct [ECF No. 24], filed on September 13, 2019. For the reasons stated below, this Motion is DENIED WITHOUT PREJUDICE.

## BACKGROUND

On October 17, 2018, the Grand Jury charged Defendant Basil Ubanwa, the operator of Northwest Ambulance Services, Inc., with (1) one count of conspiracy to commit health care fraud; (2) ten counts of health care fraud; and (3) one count of Medicaid health care fraud. *See* Indictment, ECF No. 1; 18 U.S.C. §§ 371, 1347.

Regarding Count I, conspiracy to commit health care fraud, the Grand Jury found in pertinent part that the Defendant conspired "to seek reimbursement from Medicare on behalf of Northwest Ambulance for ambulance transports of dialysis patients who did not actually qualify for ambulance transportation by falsely representing the physical conditions and abilities of the dialysis patients transported." Indictment, ¶ 15. The Grand Jury also found that, from 2011 through 2015, the Defendant and his co-conspirators directed Northwest Ambulance employees "to complete the medical assessment portion of Medical Necessity Certifications before sending the forms to the Medicare beneficiaries' physicians. On numerous occasions, physicians were asked only to sign the already completed certification forms but were not asked to make an

independent determination of medical necessity for each certification." *Id.* ¶ 17. The Grand Jury further found that, from 2011 through 2015, the Defendant and his co-conspirators "submitted Medical Necessity Certifications to physicians for Medicare beneficiaries they knew did not qualify for ambulance transportation to and from dialysis." *Id.* ¶ 18. On September 13, 2019, the Defendant filed the instant Motion to Dismiss and Bar Evidence of Pre-Amendment Conduct. The motion is fully briefed and ripe for ruling.

## ANALYSIS

The Defendant argues that his actions prior to January 1, 2013, were lawful under the then-existing legal framework because he had obtained written orders from the patients' physicians certifying that transportation by ambulance was necessary. *Compare* 42 C.F.R. § 410.40(d)(2) (eff. until Jan. 1, 2013) ("Medicare covers medically necessary nonemergency, scheduled, repetitive ambulance services if the ambulance provider . . . obtains a written order from the beneficiary's attending physician certifying that the medical necessity requirements of paragraph (d)(1) of this section are met."), *with* 42 C.F.R. § 410.40(d)(2)(ii) (effective Jan. 1, 2013) (adding new language that "[t]he presence of the signed physician certification statement does not alone demonstrate that the ambulance transport was medically necessary.").

Based upon this statutory interpretation, the Defendant argues that (1) Count I of the Indictment should be dismissed to the extent that it alleges the existence of a conspiracy to commit healthcare fraud from 2011 until January 1, 2013, because he obtained certificates of medical necessity for each transported patient during that time period; and (2) the Government should be prohibited from presenting evidence regarding any alleged lack of medical necessity for such transports prior to January 1, 2013. In response, the Government argues that (1) possession of a certificate of medical necessity from a patient's physician is not sufficient in and

of itself to establish medical necessity; (2) the veracity of the certificates of medical necessity is a question of fact for the jury; and (3) 42 C.F.R. § 410(d)(2)(ii), which became effective January 1, 2013, can be retroactively applied. The Court addresses these issues in turn.

### A. The Applicable Law

A motion to dismiss is proper when an indictment fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). However, "[a] motion to dismiss is not intended to be a 'summary trial of the evidence.'" *United States v. Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989) (quoting *United States v. Winer*, 323 F. Supp. 604, 605 (E.D. Pa. 1971)); *see also United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009) ("Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." (quoting *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006))). A motion to dismiss an indictment for failure to state an offense should be denied if there is a question of fact for the jury. *Yasak*, 884 F.2d at 1001 n. 3 ("A defense [pursuant to Federal Rule of Criminal Procedure 12(b)] generally is capable of determination before trial if it involves questions of law rather than fact. If the pretrial claim is substantially intertwined with the evidence concerning the alleged offense, the motion to dismiss falls within the province of the ultimate finder of fact."); *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) ("Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial.").

It is a criminal offense to conspire to "defraud the United States, or any agency thereof in any manner or for any purpose." 18 U.S.C. § 371; *see United States v. Kelerchian*, 937 F.3d 895, 905 (7th Cir. 2019). Furthermore, it is a criminal offense to knowingly and willfully execute, or

3

attempt to execute, a scheme to defraud any health care benefit program. 18 U.S.C. § 1347(a); *see United States v. Bek*, 493 F.3d 790, 801 (7th Cir. 2007).

"Under the Medicare Act, health care providers are entitled to reimbursement for the 'reasonable cost' of medical services they provide to Medicare beneficiaries." *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 541 (7th Cir. 2012) (citing 42 U.S.C. § 1395f(b)(1); 42 C.F.R. § 413.9(a)). Medicare covers ambulance services so long as certain conditions are met. *See* 42 C.F.R. § 410.40(a). In pertinent part, nonemergency ambulance transportation is appropriate "if either: the beneficiary is bed-confined, and it is documented that the beneficiary's condition is such that other methods of transportation are contraindicated; or, if his or her medical condition, regardless of bed confinement, is such that transportation by ambulance is medically required." 42 C.F.R. § 410.40(d)(1).

Medicare also has a special rule for nonemergency, scheduled, repetitive ambulance services. 42 C.F.R. § 410.40(d)(2). Prior to January 1, 2013, this rule provided only as follows:

> Medicare covers medically necessary nonemergency, scheduled, repetitive ambulance services if the ambulance provider or supplier, before furnishing the service to the beneficiary, obtains a written order from the beneficiary's attending physician certifying that the medical necessity requirements of paragraph (d)(1) of this section are met. The physician's order must be dated no earlier than 60 days before the date the service is furnished.

42 C.F.R. § 410.40(d)(2) (eff. until Jan. 1, 2013). However, effective January 1, 2013, this rule was moved into subsection (i) of 410.40(d)(2) and subsection 410.40(d)(2)(ii) was added. *See* 42 C.F.R. § 410.40(d)(2)(i), (ii) (eff. Jan. 1, 2013). This regulation now reads:

> (i) Medicare covers medically necessary nonemergency, scheduled, repetitive ambulance services if the ambulance provider or supplier, before furnishing the service to the beneficiary, obtains a written order from the beneficiary's attending physician certifying that the medical necessity requirements of paragraph (d)(1) of this section are met. The physician's order must be dated no earlier than 60 days before the date the service is furnished.

4

> (ii) In all cases, the provider or supplier must keep appropriate documentation on file and, upon request, present it to the contractor. The presence of the signed physician certification statement does not alone demonstrate that the ambulance transport was medically necessary. All other program criteria must be met in order for payment to be made.

*Id.*

The legal effect of a certificate of medical necessity signed by a patient's physician is a matter of first impression within the Seventh Circuit. However, other courts have addressed this issue. In *United States v. Read*, 710 F.3d 219, 222 (5th Cir. 2012), the defendants owned a company that provided non-emergency ambulance transportation for dialysis patients. The government alleged that the defendants submitted fraudulent claims to Medicare and were guilty of conspiracy to commit health care fraud, and a jury found the defendants guilty of this offense. *Id.* at 222–23. The defendants appealed, arguing that their convictions must be reversed because they were not required to independently assess each patient's medical necessity for ambulance transport once the patient's physician furnished a certificate of medical necessity (CMN). *Id.* at 228. The Fifth Circuit noted that the defendants "had doctors sign blank CMNs on many occasions, thus completely removing the doctors from the medical necessity determination." *Id.* The Court also noted that "EMTs, doctors, and nurses testified that the four patients at issue plainly did not qualify for ambulance transport. At the [defendants'] direction, however, EMTs misrepresented the patients' eligibility to ensure payment." *Id.* Based upon this, the court affirmed the defendants' convictions. *Id.* Further, the court concluded that "[p]ossession of a CMN—even one that is legitimately obtained—does not permit a provider to seek reimbursement for ambulance runs that are obviously not medically necessary." *Id.* at 228 (citing 42 C.F.R. § 410.40(d)(2)).

In *United States v. Medlock*, 792 F.3d 700, 703 (6th Cir. 2015), the defendants owned and operated an ambulance service company which offered non-emergency transportation to kidney dialysis patients. In July 2011, a grand jury indicted the defendants with conspiracy to commit health care fraud, health care fraud, and making a false statement in connection with payment for health care benefits. *Id.* at 704. Evidence introduced at trial tended to indicate that the defendants had altered documentation made by the Emergency Medical Technicians during patient transports. *Id.* In May 2013, the defendants were convicted on all counts. *Id.* at 705. On appeal, the defendants argued that having obtained the CMNs demonstrated that the ambulance transportation was medically necessary. *See id.* at 709. The Sixth Circuit, after noting that the first principle of statutory construction is to give effect to every clause and word of a statute, concluded that the "regulations provide that 'Medicare covers *medically necessary* nonemergency, scheduled, repetitive ambulance services if the ambulance provider . . . obtains a [CMN].'" *Id.* (quoting 42 C.F.R. § 410.40(d)(2) (emphases and alterations in original)). Based upon this reasoning, the court rejected the defendant's argument and concluded that "Medicare covers 'nonemergency, scheduled, repetitive ambulance services' only if both (1) those services are medically necessary and also (2) the ambulance provider obtains a CMN." *Id.* (quoting 42 C.F.R. § 410.40(d)(2)).

In *United States v. Advantage Medical Transport, Inc.*, 698 F. App'x 680, 682 (3rd Cir. 2017), the defendants provided nonemergency ambulance transportation to Medicare beneficiaries who needed transportation to regularly scheduled dialysis appointments. In January 2012, the defendants were charged with twenty-nine counts of health care fraud. *Id.* at 683. The government alleged that the defendants had billed Medicare for the unnecessary ambulance transportation of twenty-six dialysis patients from 2007 until 2011. *Id.* The defendants

6

subsequently pleaded guilty to making false statements in health care matters. *Id.* The district court later conducted several evidentiary hearings to determine the financial loss that Medicare suffered as a result of the allegedly unnecessary ambulance transportation. *Id.* at 684–85. The government argued that the transportation of all twenty-six patients was unnecessary, while the defendants argued that all of its services were medically necessary. *Id.* Ultimately, the district court found that transportation by ambulance for five of the Medicare beneficiaries was not medically necessary. *Id.* at 685. On appeal, the defendants argued that transport of three of the five beneficiaries was medically necessary under the regulations in effect at the time of the transport because these patients had a CMN from their physicians. *Id.* at 686. The government, relying upon *Read*, 710 F.3d at 228, argued that there must be (1) actual medical necessity and (2) a CMN from the patient's physician.

The Third Circuit rejected the government's argument and concluded that "the plain language of the regulation, as written at the time [the defendants] transported these beneficiaries, required nothing more than a physician's certification that the transport was medically necessary. [The defendants] did not have to second guess these certifications as long as they were legally obtained." *Id.* at 687. The court also distinguished the government's reliance upon *Read*, 710 F.3d at 228:

> Like here, the defendants in *Read* were convicted of health care fraud for billing Medicare for ambulance transports of dialysis patients. But, the similarities end there. First, physicians in *Read* testified that the transports under review were not medically necessary; here the physicians testified that they were. Second, the ambulance company owners [in *Read*] had the doctors pre-signed blank certificates, which the owners and employees fraudulently filled-in at a later date. In other words, in *Read*, physicians were completely removed from the medical necessity determination. By contrast, the treating physicians of the three beneficiaries whose transports were included in the loss amount here all testified that there was a present medical necessity which required that those beneficiaries be transported by ambulance.

*Advantage Med. Transp.*, 698 F. App'x at 689. Additionally, the court declined to retroactively apply 42 C.F.R. § 410.40(d)(2)(ii) to conduct which occurred prior to January 1, 2013. *Advantage Med. Transp.*, 698 F. App'x at 688 ("Of course, the regulation in effect today is different from the regulation that was in effect during the time of the transports here. But, we are nonetheless bound to consider the regulation that was in place at the time of the transports in dispute."). Based upon this, the court vacated the defendant's sentence and remanded for the district court to recalculate the amount of loss which Medicare incurred. *Id.* at 692.[1]

**B.     The Certificates of Medical Necessity**

The Defendant, relying upon the Third Circuit's reasoning in *Advantage Medical Transport*, 698 F. App'x at 686–89, argues that his actions prior to January 1, 2013, were lawful because he had time-appropriate certificates of medical necessity for ambulance transportation provided by the respective patients' physicians and that nothing more was required in order to seek reimbursement for the ambulance transports. The Government, in contrast, argues that (1) this Court should adopt the reasoning established by the Fifth Circuit in *Read*, 710 F.3d at 228, and the Sixth Circuit in *Medlock*, 792 F.3d at 709; and (2) the veracity of the certificates of medical necessity is a question of fact for the jury. The Court agrees with the Government's latter argument, so the Court need not address the circuit split at this time.

In this case, the Grand Jury found that the Defendant conspired "to seek reimbursement from Medicare on behalf of Northwest Ambulance for ambulance transports of dialysis patients who did not actually qualify for ambulance transportation by falsely representing the physical conditions and abilities of the dialysis patients transported." Indictment, ¶ 15. The Grand Jury

---

[1] However, Judge Kent A. Jordan dissented. *Advantage Med. Transp.*, 698 F. App'x at 693 (Kent, J., dissenting) (citing *Medlock*, 792 F.3d at 709).

also found that, from 2011 through 2015, the Defendant ordered his employees "to complete the medical assessment portion of Medical Necessity Certifications before sending the forms to the Medicare beneficiaries' physicians. On numerous occasions, physicians were asked only to sign the already completed certification forms but were not asked to make an independent determination of medical necessity for each certification." *Id.* ¶ 17. The Grand Jury further found that the Defendant "submitted Medical Necessity Certifications to physicians for Medicare beneficiaries they knew did not qualify for ambulance transportation to and from dialysis." *Id.* ¶ 18.

If the Government proves these facts at trial, a reasonable jury could find the Defendant guilty of conspiracy to commit health care fraud because the certificates of medical necessity were not lawfully obtained. *See Read*, 710 F.3d at 228 (affirming the defendants' convictions when the defendants (1) had doctors sign blank CMN forms on multiple occasions and (2) directed EMT's to misrepresent the patients' medical condition). Accordingly, the Court cannot grant the Defendant's request to partially dismiss the indictment because the veracity of the certificates of medical necessity is a question of fact that must be developed at trial. *Yasak*, 884 F.2d at 1001 n. 3; *see also Torkington*, 812 F.2d at 1354. Furthermore, if the jury finds that the certificates of medical necessity were not lawfully obtained, then the Defendant's argument fails under either interpretation of the statute. *Compare Advantage Med. Transp.*, 698 F. App'x at 687 ("[T]he plain language of the regulation, as written at the time [the defendants] transported these beneficiaries, required nothing more than a physician's certification that the transport was medically necessary. [The defendants] did not have to second guess these certifications as long as they were legally obtained."), *with Read*, 710 F.3d at 228 ("Possession of a CMN—even one that is legitimately obtained—does not permit a provider to seek reimbursement for ambulance

runs that are obviously not medically necessary."). Therefore, the Court rejects the Defendant's argument at this time.

C.  **The Defendant's Request to Exclude Evidence**

The Defendant, based upon his statutory interpretation argument described above, argues that the Government should be barred from presenting any evidence regarding any alleged lack of medical necessity for any transports prior to January 1, 2013. The Court disagrees.

"The Federal Rules of Evidence state that, generally, '[a]ll relevant evidence is admissible' and that '[e]vidence which is not relevant is inadmissible.'" *United States v. Price*, 418 F.3d 771, 778 (2005) (quoting Fed. R. Evid. 402)). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "However, Rule 403 provides that relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Price*, 418 F.3d at 778 (quoting Fed. R. Evid. 403)).

The Defendant argues that his conduct prior to January 1, 2013, should be excluded due to the change in the applicable regulations. Certainly, this argument is premised upon the Defendant's statutory argument described above. However, as noted above, the Defendant's actions prior to January 1, 2013, could still give rise to criminal liability. Accordingly, such evidence is highly probative. Further, the Court determines that such evidence is not substantially outweighed by concerns of unfair prejudice, confusion of the issues, or undue delay. Therefore, the Defendant's request to bar evidence of his action prior to January 1, 2013, is denied without prejudice.

### D. Retroactive Application of the Law

Finally, the Government argues that 42 C.F.R. § 410(d)(2)(ii) (eff. Jan. 1, 2013) can be retroactively applied to conduct occurring prior to the effective date of the regulation. Within the context of this case, the Court disagrees. The Third Circuit has noted that "the regulation in effect today is different from the regulation that was in effect during the time of the transports here. But, we are nonetheless bound to consider the regulation that was in place at the time of the transports in dispute." *Advantage Med. Transp.*, 698 F. App'x at 688 (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1998) ("Retroactivity is not favored in the law. Thus, Congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.")). Likewise, in *Medlock*, a 2015 decision issued after the effective date of subsection 410(d)(2)(ii) in 2013, the Sixth Circuit applied the version of 42 C.F.R. § 410(d)(2) in effect in 2011 to the criminal conduct which arose in 2011. *See Medlock*, 792 F.3d at 703–04, 708–09. Moreover, as a general rule, the Seventh Circuit has held that retroactivity in the law is not favored. *Velásquez-García v. Holder*, 760 F.3d 571, 579 (7th Cir. 2014) (quoting *Bowen*, 488 U.S. at 208). The Government fails to distinguish the cases above, nor has it shown that the language of 42 C.F.R. § 410(d)(2)(ii) requires a retroactive result. Accordingly, the Court rejects the Government's argument that 42 C.F.R. § 410(d)(2)(ii) (eff. Jan. 1, 2013) can be retroactively applied to a defendant in a criminal case.

### CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss and Bar Evidence of Pre-Amendment Conduct [ECF No. 24] is DENIED WITHOUT PREJUDICE.

SO ORDERED on November 15, 2019.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT